Appeal of **THE TROXEL MANUFAC-**         Docket No. 587
           **TURING CO.**

The evidence adduced by taxpayer at the hearing of this appeal sustains its contention as to the value of tangible property bona fide paid in for its capital stock of the par value of $202,000. The values so established should be used as a basis for the computation of taxpayer's invested capital and of its depreciation deductions.

Submitted January 15, 1925; decided February 28, 1925.

*G. A. Spencer, Esq.,* for the taxpayer.

*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal is from a determination by the Commissioner asserting a deficiency in income and profits taxes for the years 1920 to 1922, inclusive. The case was submitted on the pleadings and on depositions and was argued by counsel. From the pleadings and the evidence, the Board makes the following

FINDINGS OF FACT.

1. Taxpayer is a corporation, organized under the laws of the state of Ohio, on February 1, 1917, with its principal office at Elyria, Ohio. On February 1, 1917, taxpayer purchased from another corporation of the same name a certain tract of real estate with buildings thereon, situated in Elyria, Ohio, and paid therefor shares of its (taxpayer's) own stock of the par value of $202,000. The real estate and buildings were taken upon taxpayer's books at $202,000. The circumstances leading up to and surrounding the purchase of the real estate were as follows:

The real estate in question had been owned for many years prior to the year 1916 by the Ely Realty Co., all the capital stock of which was held by five brothers and sisters, members of the Ely family of Elyria, Ohio. The company was managed by George H. Ely. During the year 1915 the stockholders of the Ely Realty Co. (other than George H. Ely) became dissatisfied with the management of the corporation. The result was that George H. Ely made his brothers and sisters an offer to purchase their stock in the Ely Realty Co. at a price which would net them more than they would receive from a sale of the property and a liquidation of the company. They accepted his offer on or about February 1, 1916, and gave him an option on their stock for a period of 30 days, and also authority to dispose of such property of the Ely Realty Co. as might be necessary to raise sufficient money to enable him to exercise the option. In order to carry out the deal it was necessary that George H. Ely raise about $500,000 in cash within 30 days. He succeeded in raising about $430,000, but within 10 days of the date on which the option was to expire he still lacked $70,000 of having the necessary amount. He had prior to that time been negotiating with a Mr. Brandt, of the Troxel Manufacturing Co., a

predecessor corporation, although a separate and distinct corporate entity from the taxpayer, for the sale of the property involved herein. On February 22, 1916, being under the necessity of immediately raising $70,000 cash or failing to exercise his option and thereby losing large prospective profits, George H. Ely, acting pursuant to his authority above referred to, sold the property in the name of the Ely Realty Co. to taxpayer's predecessor corporation (Troxel Manufacturing Co.) for $70,000, an amount less than its real value at that time. Between February 22, 1916, and February 1, 1917, the purchaser made improvements on the property at a cost of about $22,000, making the total cost of the property to it approximately $92,000. It held the property until February 1, 1917, at which time it conveyed the property in question to the taxpayer, a then newly organized corporation. This property was conveyed to the taxpayer in consideration of shares of the taxpayer's capital stock of the par value of $202,000.

2. On the real estate in question there were at the time of the sale ʰy the Ely Realty Co., two buildings, one a hotel building of little value, and the other a factory and office building in good repair, which had cost about $103,000. Real estate values in Elyria, Ohio, increased greatly between February 22, 1916, and February 1, 1917. The testimony of witnesses was to the effect that such values almost doubled within that period. The property here in question was in the year 1917 appraised for purposes of taxation and carried on the tax duplicate of the county in which it is situated at $167,000, the land being given a value of $42,000 and the buildings a value of $125,000. The appraised value represented approximately two-thirds of the actual value of the property. The land in question with the buildings thereon had on February 1, 1917, a fair market value of at least $202,000.

3. The taxpayer is a separate and distinct corporate entity from the Troxel Manufacturing Co., to which the real estate was sold by George H. Ely under his authority from the Ely Realty Co.

4. The Commissioner excluded from taxpayer's invested capital for the years 1920, 1921, and 1922, the amounts of $74,839.51 and $34,468.20, the alleged additional value of the land and buildings, respectively, in excess of their cost to the *original* Troxel Manufacturing Co., and also refused to allow taxpayer deductions for the years 1920, 1921, and 1922, in the amount of $1,378.73 for each year, the amount representing depreciation at the rate of 4 per cent per annum on the item of $34,468.20. The parties are agreed that the rate of 4 per cent per annum is a proper rate of depreciation. Based upon the reduction of invested capital and the disallowance of deductions for depreciation, the Commissioner determined a deficiency in tax for each of the years 1920, 1921, and 1922. The Commissioner notified the taxpayer of such determination by registered letter dated September 12, 1924. From that determination taxpayer appealed. Petition was filed November 10, 1924.

#### DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

KORNER: Taxpayer contends that it should be allowed for purposes of invested capital in the years 1920, 1921, and 1922, an amount of $202,000, such amount representing the actual cash value of certain real estate purchased by the taxpayer with shares of its capital stock of the par value of $202,000, and that the portion of such valuation representing the value of the buildings thereon at the date of purchase should be included in determining the deductions allowable on account of exhaustion, wear and tear thereof.

The pertinent provisions of law relative to invested capital for the years 1920, 1921, and 1922, are contained in section 326(a)(2) of the Revenue Act of 1918 and section 326(a)(2) of the Revenue Act of 1921. The sections which are identical are as follows:

> Sec. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section) : * * *
> (2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus.

The evidence in this case, briefly summarized, shows that on February 22, 1916, George H. Ely sold the property under consideration herein for $70,000, an amount which he considered, and which has been shown to be, much less than its actual value at that time. In our opinion that sale is not controlling in determining the value of the property on February 1, 1917. In a sense, it was not an arm's length transaction, inasmuch as Ely was in the urgent necessity of immediately raising cash and was placed in the dilemma of sacrificing this particular property at a price less than its real value, or foregoing the opportunity to realize large profits by the exercise of his option to purchase the entire stock of the Ely Realty Co. Ely, who, as far as the record discloses, has no interest in the outcome of this appeal, testified that the property was worth much more than $70,000 on February 22, 1916, and that on February 1, 1917, it had a value of $250,000.

Other disinterested witnesses testified as to the value of the property on February 1, 1917. It appears from their testimony that these witnesses have had long experience in appraising real estate and were familiar with real estate values in Elyria, as well as with the value of this particular real estate at the time of its sale. They testified unqualifiedly that there was a great increase in the value of real estate in Elyria during the period February, 1916, to February, 1917, and that the land and buildings purchased by the taxpayer had a cash or market value on February 1, 1917, of at least $250,000. The Deputy County Auditor of the county in which Elyria is situated testified that the property in question was appraised for taxation in the year 1917 at $167,000, which was about two-thirds of its actual value. It was also shown that one of the

buildings on the property had cost the Ely Realty Co. about $103,-000 to erect, and that on February 1, 1917, it was in good state of repair.

The evidence in this case convinces us that the real estate purchased by taxpayer on February 1, 1917, had a value of at least $202,000 at that time. Stock of the par value of $202,000 was issued therefor. The value of the real estate having been established to be at least $202,000 at the date of its acquisition by taxpayer, and that amount not being in excess of the par value of the stock issued therefor, we are of the opinion that taxpayer is entitled to include in invested capital on account of this real estate, in the years 1920 to 1922, inclusive, the amount of $202,000. The amount of $109,307.71, being the sum of $74,839.51 representing value of land and $34,468.20 representing buildings, should be restored to taxpayer's invested capital.

In view of our conclusion as to the value of the real estate on February 1, 1917, it follows that the value of the buildings disallowed by the Commissioner in the amount of $34,468.20 should be included in the basis for computation of depreciation and that a deduction of $1,378.73 should be allowed on that account in each of the years 1920, 1921, and 1922.